UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

ROBERTA LONOAEA, Individually
and as Guardian for RONNIE J.
LONOAEA, an Incapacitated Person                                    PLAINTIFFS


VERSUS                                                    CIVIL ACTION NO. 2:07-CV-225


CORRECTIONS CORPORATION OF
AMERICA, JOHN D. FERGUSON, JIMMY TURNER, and
ANTHONY GRANDE, individually and in their capacities as
CCA officers, DEPARTMENT OF PUBLIC SAFETY,
STATE OF HAWAII                                                      DEFENDANTS

# ORDER

This cause comes before the court on the motion of defendants for partial summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiffs Roberta Lonoaea, individually and as guardian for Ronnie Lonoaea, have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion should be granted in part and denied in part.

# FACTS

Plaintiffs filed the instant action under 42 U.S.C. § 1983 and Mississippi law for injuries suffered by Ronnie Lonoaea ("Ronnie") as a result of an attack by fellow inmates at the Tallahatchie County Correctional Facility ("TCCF"). The TCCF is located in Tutwiler, Mississippi and is operated by defendant Corrections Corporation of America ("CCA"). Ronnie was originally an inmate with the Hawaii Department of Public Safety

("DPS"), but on June 23, 2004, he was transferred to the TCCF pursuant to a correctional services contract entered into between Hawaii DPS and CCA.

Due to his behavioral history, which included numerous disciplinary infractions, Ronnie was housed in administrative segregation at the Special Housing Incentive Program ("SHIP") located in the H-16 unit of the prison. Plaintiffs concede that Ronnie was a very difficult inmate, noting that he regularly demonstrated threatening behavior towards other inmates, including members of hostile gangs:

> Ronnie was well-known throughout the SHIP. Officer Christopher Phillips attested that he observed Mr. Lonoaea "kick his cell door, for hours on end, on a daily basis as well as employing racial slurs and attempting to spit on officers and inmates." Officer Phillips further noted that Ronnie's threats were "especially concentrate[d] on other inmates' gang affiliation[s] and that he would "repeatedly threaten to harm members of the United Samoan Organization (USO) and La Familia prison gangs."

Plaintiffs contend, however, that these behavioral problems were a manifestation of a broader mental illness, for which, they contend, Ronnie was not provided adequate treatment by CCA.

Plaintiffs concede that Ronnie was provided with some mental health treatment by CCA, but they contend that this treatment was insufficient and that the incentive-based SHIP program was inappropriate for a prisoner as mentally ill as Ronnie. Plaintiffs also contend that CCA failed to take reasonable steps to ensure that Ronnie never came into contact with hostile gang members and that it failed to abide by its contractual agreement with the State of Hawaii regarding prisoner care. This agreement included a commitment by CCA to review all records to "ensure the appropriateness of each inmate's custody

level prior to the transfer of the Inmate to the Facility."

The incident giving rise to this lawsuit occurred on July 17, 2005, when Sgt. Charles Jackson, a CCA employee, was on duty in the H-16 segregation unit control room. At approximately 2:45 a.m., as two CCA correctional officers began approaching the H-16 unit to conduct security checks, Jackson pushed the button to activate the door that would allow them to enter the unit. For reasons which are not clearly understood, Jackson's activation of the door opening mechanism resulted in all of the cell doors in H-16 unexpectedly opening. Defendants note that there is a "group release" button on the control board, which, if pressed, would result in all of the doors within H-16 unlocking. However, Jackson denies that he pressed the group release button, either intentionally or unintentionally. For their part, plaintiffs appear to place little focus on Jackson, inasmuch as they have not named him as a defendant in this lawsuit and characterize his actions as being a "red herring" in this case.

Regardless of the incident's cause, plaintiffs describe the events that followed the opening of the cell doors as follows:

> On July 17, 2005 at approximately 2:48 a.m., the cell doors in the SHIP unexpectedly opened and other inmates rushed into Ronnie's cell and brutally beat him. When Capt. Taylor arrived at the SHIP on the day of the incident, [he] asked two corrections officers to go look at the window because he was concerned with one inmate - Ronnie Lonoaea. Capt. Taylor further testified that he informed Capt. Dodd of this concern. Capt. Taylor stated that he was concerned about Ronnie because "I knew that he had caused a lot of problems on that pod, on that day room pod with those inmates." The SORT team finally entered into the pod at 5:03 a.m., nearly 2 ½ hours after the doors opened, and tended to Ronnie. Ronnie was severely injured from this assault. He suffered severe trauma to his head

and face, and was diagnosed with a closed head injury.

Defendants contend that CCA's officers responded promptly and properly to the unforseen events, as follows:

> As soon as Sgt. Jackson realized the H-16 cell doors were unlocking, he began beating on the control room windows and screaming on the intercom to alert the two floor officers that the cell doors were unexpectedly unlocking so that the officers could get to safety. As the cell doors unlocked, three inmates on the top tier of the unit immediately exited their cells. As additional doors unlocked, more inmates exited their cells. Pursuant to his training, Sgt. Jackson immediately notified Cpt. Taylor that the cell doors in H-16 had unexpectedly opened. Shortly thereafter, a Response Team began to assemble and began formulating their response to the disturbance, which included administering gas into the unit. After the inmates exited their cells, an altercation occurred between inmates Scott Lee and Ikaika Reed in the day room of the segregation unit. Instead of returning to their cells so that the doors could be secured, inmates either watched the fight or barricaded the doors and caught and redirected the gas canisters so that the correctional officers could not enter the unit. Sometime during this time period, Ronnie Lonoaea was assaulted in his cell, outside of the view of the correctional officers responding to the incident. Ronnie Lonoaea was discovered, lying on the floor of his cell, by officers who were checking the security of the cell windows of the H-16 unit from the outside. Despite the fact that the cell doors in H-16 were still not secure at the time Ronnie Lonoaea was discovered to be injured, the SORT team devised an entry plan and entered the unit at approximately 5:03 a.m., followed by medical personnel who immediately assessed him.

Defendants further contend that they took precautions, in modifying the control board (which was designed and installed by ESI Companies), to prevent accidental group releases:

> [P]rior to the July 17, 2005 incident, CCA installed PVC sleeves/caps over the group release buttons to protect against inadvertent activation of the group release buttons by CCA correctional personnel. The PVC sleeves/caps were intended to guard against accidental activation of the group release button by making the button physically distinguishable from

4

> the others, so that one would be able to determine, by touch, the difference between the group release button and the other control board buttons. This precautionary measure was not predicted upon any prior accidental group releases; there had not been any inadvertent group releases initiated by correctional personnel before the July 17, 2005, incident. TCCF Maintenance Supervisor Larry Bramuchi inspected the TCCF control boards on a weekly basis—testing the PVC sleeves/caps covering the group release buttons to make sure they were secure and checking to ensure that the pod doors would properly secure.

Defendants assert that Bramuchi discussed CCA's modification of the control board with an ESI supervisor and that "ESI expressed no criticisms of CCA's efforts."

For their part, plaintiffs dispute that the control board was in a safe condition, arguing that the modifications that CCA made to it were not properly maintained:

> Plaintiffs do not disagree with all of Defendants facts regarding the Control Board. What CCA failed to disclose, however, was the condition of the group release button in H-16 on July 17, 2005, the day of the assault. Trey Moore, an ESI field technician, reported that on July 17, 2005 when he arrived at the control room where the incident took place, the first thing he noticed was a "piece of PVC conduit on the panel held on by electrical tape and dangling from the Group Release button." The supposed "extra precaution" CCA took, was not properly maintained.

While defendants' liability for Ronnie's injuries is disputed, it is not disputed that he suffered serious head trauma as a result of the July 17, 2005 incident. In November 2005, Ronnie was transferred to Florence Correctional Center in Arizona (another CCA facility), where he remained in solitary confinement because of his behavioral disorder. Upon completion of his sentence in December 2008, Ronnie was transferred to the Hawaii State Hospital. Dr. Margaret Grant, Ronnie's treating physician at Hawaii Hospital, has opined that Ronnie's brain injury would prevent him from ever being

5

released from a secured institutional facility.

## **PROCEDURAL HISTORY AND ANALYSIS**

On July 11, 2007, plaintiffs filed the instant action in federal court in the District of Hawaii, asserting state and federal claims against CCA and three of its corporate officers, as well as against the Hawaii DPS. The Hawaii district court subsequently transferred the case to this court. Defendants have presently moved for partial summary judgment, conceding that plaintiffs have established triable fact issues with regard to their claims of negligence against CCA but arguing that the remaining defendants and claims should be dismissed.

The court initially notes that, while not raised as an issue by the parties in their briefs, plaintiffs' claims against Hawaii DPS are barred by the Eleventh Amendment to the U.S. Constitution. A federal district court is under an initial obligation to review the allegations of a complaint to determine if the court's jurisdiction over the suit is barred by the Eleventh Amendment, see *Barry v. Fordice*, 814 F. Supp. 511, 514 (S.D. Miss. 1992) and it is clear that this court lacks jurisdiction over plaintiffs' claims against the State of Hawaii.

A Hawaii district court recently noted that "the State of Hawaii and [the Hawaii Department of Public Safety]" like other states, "are immune from suit in federal court" pursuant to the Eleventh Amendment. *Trueman v. Hawaii*, 2009 WL 3109869, *1 n3 (D. Haw. 2009), *citing Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72 (1996). While Hawaii has waived sovereign immunity in the Hawaii State Tort Liability Act, it has not

6

waived its Eleventh Amendment immunity. *See Doe v. State of Haw. Dep't of Educ.*, 351 F. Supp. 2d 998, 1018 (D. Haw. 2004) ( "Although the State of Hawaii generally waives ... sovereign immunity as to torts of its employees in the Hawaii State Tort Liability Act ... this waiver only applies to claims brought in state courts and does not constitute a waiver of the State's Eleventh Amendment immunity.").

The Supreme Court has held that certain federal statutes (e.g. Title VII) trump Eleventh Amendment immunity, but Section 1983 is not one of them. *Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979). Moreover, the Eleventh Amendment bars the adjudication of pendent state law claims against non-consenting state defendants in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). Accordingly, it is plain that plaintiffs' claims against Hawaii DPS are barred by Eleventh Amendment immunity, and this defendant will therefore be dismissed from this case without prejudice to a future determination of its potential liability in state court.

In light of Hawaii DPS's dismissal from this case, the remaining defendants in this case are CCA and three of its officers. Plaintiffs have conceded that some of their claims against these defendants are due to be dismissed, and the remaining claims center around 1) various negligence claims brought under Mississippi law and 2) Eighth Amendment claims brought under § 1983.

In their brief, defendants concede that plaintiffs are able to establish genuine fact issues regarding their negligence and negligent infliction of emotional distress claims

against CCA, but only "with respect to any claim asserted by plaintiffs based upon the inadvertent opening of the cell doors." However, CCA seeks dismissal of the remaining state and federal claims which plaintiff asserts against it, as well as all claims asserted against its officers. The court agrees that plaintiffs have established triable fact issues regarding whether CCA acted negligently in this case and that it might potentially be held liable for emotional distress damages suffered by Ronnie. It appears to this court, however, that any such emotional distress damages are properly regarded as a recoverable element of damages in this case, rather than as the separate tort of "negligent infliction of emotional distress." Generally, the latter term is used in Mississippi tort law to refer to a separate cause of action in cases where the plaintiff suffered no compensable physical injury. *See, e.g. Mabus v. St. James Episcopal Church*, 13 So.3d 260, 262 (Miss. 2009). In cases where (as here) plaintiff did suffer such physical injuries, it is well established that emotional distress damages resulting from such injury are compensable, so long as they were a foreseeable result of the defendant's negligence and can be proven to the satisfaction of the jury. In such cases, emotional distress is properly regarded as a compensable element of damages, rather than as a separate cause of action.

In addition, the court does not necessarily agree with defendants that its potential liability in this case is limited to the "inadvertent opening of the cell doors." As discussed below, plaintiffs allege that defendants acted negligently and/or in violation of the Eighth Amendment in several different respects in this case, including by failing to properly segregate Ronnie from other prisoners who wished to do him harm and by failing to

8

recognize that his behavioral and disciplinary problems resulted from severe mental illness that was in need of treatment. While plaintiffs are, as discussed below, unable to establish Eighth Amendment violations by any defendant in this case, the court does leave open the possibility that they will be able to establish that defendants acted negligently in this case based on actions other than the accidental opening of the cell doors.

At the same time, it does not appear to this court that the jury should be specifically instructed as to the torts of "negligent hiring" or "negligent supervision." While a final ruling on this issue will be made at trial, it does not appear at this juncture that plaintiff's evidence of negligence on the part of CCA falls under the categories of either "hiring" or "supervision" of its employees. Rather, it appears that the primary evidence that CCA acted negligently in this case relates to 1) the decisions which it made in choosing whether and how to treat Ronnie's mental illness and how best to incarcerate him; and 2) the actions taken by CCA employees relating to the July 17, 2005 incident. These are all discrete acts which plaintiffs will, no doubt, attempt to persuade jurors constituted negligence on the part of CCA. The court sees no basis for concluding, however, that any negligence on the part of CCA in hiring or supervising its employees was a proximate cause of Ronnie's injuries in this case, for essentially the reasons stated by defendants in their brief. Plaintiffs will have the opportunity to persuade the court otherwise at trial, but, at this juncture, it sees no need to instruct the jury regarding any cause of action other than simple negligence.

In addition to their negligence claims, plaintiffs also seek to recover against CCA

9

and its officers under § 1983 for alleged Eighth Amendment violations. Prison officials can be held liable for an Eighth Amendment violation when an inmate shows: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison official had "the state of mind ... of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 1977 (1994)) (citations omitted). The Supreme Court has held that "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 114 S.Ct. at 1981.

The U.S. Supreme Court has held that subjecting individuals to a substantial risk of future harm can be cruel and unusual punishment if the conditions presenting the risk are "sure or very likely to cause serious illness and needless suffering" and give rise to "sufficiently imminent dangers." *Helling v. McKinney*, 509 U.S. 25, 33-35, 113 S. Ct. 2475 (1993). Significantly, the Supreme Court has held that an isolated mishap alone does not violate the Eighth Amendment, *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 463-464, 67 S.Ct. 374, because such an event, while regrettable, does not suggest cruelty or a "substantial risk of serious harm."

In light of the foregoing authority, the court concludes that the attack on Ronnie can not be regarded as a "sufficiently imminent danger" posing a "substantial risk of serious harm" so as to support a finding of "deliberate indifference" on the part of CCA or its employees. Plaintiffs would have much stronger Eighth Amendment claims in this

10

case if one or more CCA employees had knowingly placed Ronnie in unsupervised contact with hostile inmates and the attack had taken place at that time. In reality, it was only the accidental opening of cell doors which allowed the attack on Ronnie to take place, and this fact makes it much more difficult for plaintiffs to prove the required nexus between prison officers' decisions and the attack suffered by Ronnie. In the court's view, there are jury issues regarding whether the accidental opening of doors was sufficiently unforeseeable so as to render it a superseding cause as to any prior acts of negligence by CCA. For Eighth Amendment purposes, however, it is plain that none of the decisions made by CCA in choosing how best to incarcerate Ronnie can be said to reflect "deliberate indifference" to any "sufficiently imminent danger" faced by Ronnie. Indeed, it is difficult to understand how CCA employees should have anticipated "imminent danger" of an attack on Ronnie when that attack only came about as a result of a rather freakish mishap.

It is easy, with the benefit of hindsight, to second-guess the actions taken by prison officials in this case, but it is apparent that Ronnie was an extremely difficult prisoner who would challenge even the most competent prison officials. Even assuming that defendants did act negligently in failing to recognize that behavior as seriously aberrant as Ronnie's should have been treated as a mental health (rather than as disciplinary) matter, it does appear that CCA made good-faith efforts to ensure his safety. For example, Ronnie was placed in a cell by himself to prevent attacks by other inmates, and, plaintiffs note that prison officers had serious concerns for Ronnie's safety in light of the

highly aggressive and insulting behavior which he demonstrated towards other inmates. Moreover, plaintiffs concede, as noted previously, that CCA did provide some mental health treatment to Ronnie, including providing him with anti-psychotic medications. Further, the modifications which CCA employees made to the control panel clearly reflect a good faith attempt to prevent unauthorized door openings, even if, as plaintiffs contend, those modifications were carried out negligently. In sum, the court sees no basis for concluding that CCA or any of its employees demonstrated anything more than simple negligence in this case, and plaintiffs' Eighth Amendment claims therefore lack merit.[1]

Additionally, the court notes that plaintiffs did not name as defendants the CCA employees against whom they come closest to being able to assert Eighth Amendment claims. Plaintiffs concede in their brief that "deliberate indifference requires to prove that the official was subjectively aware of the risk," and, they do cite evidence suggesting that CCA employees Christopher Phillips, Lt. Shalandra Dudley, and Capt. Otis Taylor were subjectively aware that Ronnie was at risk from hostile gang members. Plaintiffs cite this proof in support of their assertion that "defendants knew that Ronnie was at risk for an attack in the SHIP unit," thereby ignoring the facts that 1) they did not name Phillips, Dudley or Taylor as defendants in this lawsuit, and 2) CCA may not, as discussed below, be held vicariously liable under § 1983 for its employees' constitutional violations. It

---

[1]This fact similarly precludes plaintiffs from asserting substantive due process claims in this case, which likewise require proof of more than simple negligence. *See Davidson v. Cannon*, 474 U.S. 344, 347, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986); *Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).

appears that plaintiffs sued CCA's corporate officers in the search for "deep pockets," but, in so doing, they rendered already weak Eighth Amendment claims plainly meritless.

It is also apparent that, even if plaintiffs were somehow able to establish an Eighth Amendment violation by one of its employees, recovery against CCA would still be barred by the application of the *Monell* doctrine. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978). A private corporation that contracts with the state to run its prisons and the corporation's employees is a "state actor" subject to a suit under § 1983. *See Rosborough v. Management & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). However, "just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, so is a private corporation not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Hicks v. Corrections Corp. of America*, 2009 WL 2969898 (W.D. La. 2009), citing *Monell,* 436 U.S. at 691.

Recognizing this authority, plaintiffs seek to hold CCA liable for its own constitutional violations by showing that it acted with deliberate indifference in hiring, supervising and/or training its employees. However, these attempts are soundly defeated by the U.S. Supreme Court's decisions in *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) and *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989). The Supreme Court in *Bryan County* made it extremely difficult for plaintiffs to hold a municipality liable for its decision to hire an employee who later commits constitutional violations by

requiring a showing that the employee was "highly likely to inflict the particular injury suffered by the plaintiff." *Bryan County*, 520 U.S. at 412. As noted previously, the court is not persuaded that fact issues exist regarding whether any negligence by CCA in hiring its employees was a proximate cause of Ronnie's injuries, and plaintiffs are certainly unable to meet the very stringent *Bryan County* standard.

Plaintiffs are likewise unable to meet the *City of Canton* standard for inadequate training, which requires a showing that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 109 S. Ct. at 1204. The Court clarified in *City of Canton* that, to demonstrate such deliberate indifference, a showing of "simple or even heightened negligence will not suffice," *see id*, and it is thus apparent that plaintiffs would be unable to hold CCA liable under § 1983 even if one or more of its employees had committed an Eighth Amendment violation in this case.

The court now turns to plaintiffs' claims against individual CCA officers. Plaintiffs have sued three CCA executives in this case: John D. Ferguson, Jimmy Turner, and Anthony Grande, individually and in their capacities as President and CEO, Vice President of Operations, and Vice President of State Customer Relations, respectively. From reading plaintiffs' complaint and brief, it is unclear why these individuals were named as defendants in this lawsuit at all. The complaint notes that they held important responsibilities which, in Ferguson's case, involved the running of day-to-day operations at TCCF. However, merely noting that a particular defendant has relevant responsibilities

14

is a far cry from alleging specific facts in support of an assertion that the defendant personally took actions which violated the U.S. Constitution and/or basic negligence standards. The Supreme Court has recently tightened the pleading standards in federal lawsuits, *see Ashcroft v. Iqbal*, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and it is apparent that the complaint fails to plead facts which would establish a "plausible" case for liability against the individual defendants under *Iqbal-Twombley*.

Plaintiffs' brief in opposition to summary judgment sheds no further light on exactly what actions these defendants might have taken that violated the U.S. Constitution, and the court has previously noted its conclusion that there is no proof of Eighth Amendment violations by any CCA employee in this case. Moreover, to be personally liable under Mississippi law, an employee must have some direct, personal participation in the tort, such as being the "guiding spirit" behind the wrongful conduct or the "central figure in the challenged corporate activity." *See, e.g. Smith v. Canadian National/Illinois Cent. R.R.*, 2007 WL 922308 (N.D. Miss. 2007); *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173 (5th Cir. 1985). There is no indication in plaintiffs' brief that the individual defendants were the "guiding spirit" or the "central figure" behind any wrongful acts; indeed, they are given scant mention at all in that brief. The individual defendants will therefore be dismissed from this case, and plaintiffs will be limited to asserting negligence claims against CCA as a corporation.

While plaintiffs appear to be dissatisfied with asserting simple negligence claims,

15

it is apparent that such claims are far easier to prove than Eighth Amendment claims asserted under § 1983. Plaintiffs should consider themselves fortunate, from a litigation perspective, that they are able to assert negligence claims at all, since the vast majority of state and federal prisoners in this country would be unable to do so. Indeed, the Mississippi Tort Claims Act bars tort claims by inmates against the state and its political subdivisions altogether, *see* Miss. Code Ann. § 11-46-9(1)(m), and the U.S. Supreme Court has noted that "[f]ederal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in Government facilities," including the right to assert claims for simple negligence. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72, 122 S.Ct. 515 (U.S. 2001). The Supreme Court noted in *Malesko* that it was "ironic" that the prisoner in that case sought to assert Eighth Amendment claims since the "heightened 'deliberate indifference' standard of Eighth Amendment liability would make it considerably more difficult for respondent to prevail than on a theory of ordinary negligence." *Malesko*, 534 U.S. at 73. This court has the same impression regarding plaintiffs' efforts to assert Eighth Amendment claims in this case.

It also appears that plaintiffs have overplayed their hand in asserting punitive damages claims in this case, for essentially the same reasons that plaintiffs are unable to establish "deliberate indifference" in an Eighth Amendment context. The court would note, however, that a recent Mississippi Supreme Court decision literally applied Miss. Code Ann. § 11-1-65(1)(c)'s requirement that, if an award of compensatory damages has been assessed by the trier of fact, then "the court shall promptly commence an evidentiary

hearing to determine whether punitive damages may be considered by the same trier of fact." *Bradfield v. Schwartz*, 936 So. 2d 931, 938 (Miss. 2006). In light of *Bradfield*, it may prove necessary for this court to hold an "evidentiary hearing" on the issue of punitive damages in the event that the jury returns a verdict in favor of plaintiffs on their negligence claims. The court doubts that such a hearing will result in the submission of a punitive damages instruction to the jury, but it will not prejudge the issue at this juncture.

In light of the foregoing, the court agrees with defendants that plaintiffs should be limited to asserting negligence claims against CCA, although the court disagrees that such negligence is necessarily limited to the events of July 17, 2005. In the court's view, the jury in this case should simply be instructed as to the elements of the negligence cause of action, and plaintiffs may attempt to persuade jurors that various decisions and actions taken by CCA were negligent acts which proximately caused Ronnie's injuries in this case (including any emotional distress he may have suffered). Plaintiffs have failed to establish genuine fact issues regarding the liability of defendants other than CCA, however, and these defendants will therefore be dismissed from this lawsuit.

As an addendum, the court would note that the parties have requested that it set a briefing schedule on motions in limine after it has ruled on the summary judgment issues. In response, this court will quote from its motion in limine preferences which it previously released in a seminar to attorneys practicing in this district:

> <u>Motions in limine</u>. Judge Mills is generally not stringent in enforcing the local rule requirement that any motions in limine be filed before the pre-trial conference, so long as any such motions are filed in good faith and are

not overbroad. However, a motion in limine should be filed sufficiently early to give the other side time to respond (i.e. in accordance with the ten day response period provided by the local rules) and to give the court time to rule following briefing from all the parties. Judge Mills disfavors and has often stricken "shotgun" motions in limine whereby a party seeks to have the court exclude a lengthy list of every potential piece of evidence which the attorney can think to bring to the court's attention. Judge Mills encourages the parties to consult before trial to see what evidentiary issues are truly in dispute, and a motion in limine should only be filed if it is necessary due to such factors as complexity or undue prejudice if the matter is raised at trial. Motions in limine should not be filed if a matter is already covered by a clear rule of evidence (e.g. FRE 408, prohibiting evidence of settlement negotiations).

It appears that both sides have been over-litigating this case,[2] and the court will therefore not only encourage, but require, that they consult with each other prior to filing any motions in limine. The court will also require that any such motions be narrowly tailored to the limited purpose of such motions, as described above. It is not this court's practice to attempt to try a lawsuit in advance, and there will be many evidentiary and other issues whose significance and context will be much clearer at trial.

In light of the foregoing, it is ordered that defendants' motion for partial summary judgment is granted in part and denied in part, as more specifically set forth above. The State of Hawaii will be dismissed from this case without prejudice based on its Eleventh Amendment immunity, while plaintiffs' claims against the individual defendants John D. Ferguson, Jimmy Turner, and Anthony Grande will be dismissed with prejudice.

---

[2]In addition to a twenty-seven page reply brief, defendants have submitted a forty-two page document containing a lengthy list of "objections" to statements made in plaintiffs' response to the motion for summary judgment, as well as to various exhibits sought to be used by plaintiffs. This document will be stricken as an impermissible attempt to circumvent the limitations upon the length and number of rebuttal briefs. *See* Local Rule 7(b).

SO ORDERED this the 15th day of October, 2009

                                                /s/ Michael P. Mills
                                                CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT
                                                NORTHERN DISTRICT OF MISSISSIPPI